You're not allowed to audio or video record this session. It's being recorded in the usual way. We have our time keeping in the usual way. So when you have two minutes left, you'll get a yellow light and two minutes on the timer. And when the clock winds down, we ask you to complete your argument as quickly as possible unless you're answering a question from the court. Please mute any phones or devices that are in the background to avoid that kind of disturbance. And if a procedure that some of us have been using for these arguments to make them a little more efficient is to allow the lawyers at their option to use five minutes of their time uninterrupted. And if you would like to do that, please let us know. With that, we will call the first case of the afternoon, Fessler v. Porcelana Corona, number 20-40357. And hear first from Ms. Matthews. Good afternoon, may it please the court. My name is Melissa Dorman-Matthews and I appreciate your offer of five minutes of uninterrupted presentation, I will take it. I represent Porcelana Corona de Mexico in this request for you to vacate the district court's award of more than $4.3 million in attorney's fees and expenses to class counsel. This award must be remanded to the district court with instructions that the court analyze the fee and expense request in relation to class counsel's efforts expended for their successful clients, not all of their clients, and the results achieved for their successful clients only. The genesis of the district court's error is the court's incorrect assumption that class counsel's work was done for the claims that shared a common core of facts. It is impossible for the claims in the underlying litigation to have shared a common core of facts because the plaintiffs claimed a manufacturing defect. By definition, a manufacturing defect occurs over a finite period of time and affects a finite number of products. Had there been a design defect allegation, the story would be different. The claims would involve common facts and common evidence. A design defect, as opposed to a manufacturing defect, means that every product made to that design specification is affected and allegedly defective. The only common core of facts present in this case are those involving my client's acknowledged manufacturing problem in 2011. That problem encompassed two tank models made in part of one year, and that was 2011. It occurred at one manufacturing plant. Class counsel, on the other hand, spent almost three years trying to extrapolate that problem to other tank models made at two manufacturing plants over a period of nine years. During this time, the magistrate judge, not the district judge, presided over this case. This fundamental mistake resulted in an attorney fee award for time and expenses that were dedicated to not only the successful claims, but the unsuccessful claims and clients as well. Porcelana requests that you vacate the fee award and remand this matter for two overarching reasons. Number one, the award far exceeds the benefit conferred on the class members. And number two, the district court erred by failing to include the findings required by rules 23H and 52A. Several findings that were lacking and that should have been present are identified on the last page of our opening brief. This in itself should mandate sending the case back to the district court. The district court did make a small correct step in the right direction when it disallowed two expenses for plaintiff's statistician expert, Sean Capser. His sole job was to extrapolate the 2011 manufacturing problem to eight more years of manufacturing across two manufacturing plants involving six tank models. The court was correct when it said that Sean Capser's work went toward the broader potential classes put forward by plaintiff's complaints that class council never secured settlement for. But the court erred when it failed to apply this recognition to the entire fee and expense award. Another puzzling issue is class council statement in the joint motion for preliminary approval of the 2011 class settlement. This was filed April 2nd of 2019. The record site is 20-40357 at page 74. Class council included a heading that said, the settlement does not excessively compensate class council. And they went on to tell the court and their clients that they anticipate their fee request will be less than one third of the benefit conferred on the settlement class. On June 17th of, I'm sorry, June 17th of 2019, class council then turned around and filed a fee application requesting $12 million for the 2011 class only. This is not consistent with the court's concerns expressed in the high sulfur case. This is a bait and switch. In July of 2019, we demanded that class council segregate their fees and went line by line suggesting what amount of work was reasonably expended for their successful claims. This was resisted every step of the way. The citations to these line by line reductions are at pages 800 through 908 in record volumes, I'm sorry, case record 20-40357. And this is for a settlement class that essentially formalized Porcelana's tank replacement customer service program. After the 2011 manufacturing problem came to light, the vice president of sales engaged its customers, distributors, plumbers, and builders, and recalled the tanks. This is, the evidence to support this is found at pages 1080 through 1081 in the same record volume in 20-40357. For tanks that had already been installed, they hired plumbers to go door to door and replace tanks. Then in 2016, when the Houston news story broke, the vice president of sales got in his car and drove all over Texas to meet with the clients, the customers, which are distributors, plumbers, and home builders to determine if more needed to be done. And then the next year, 2017, class council came along and you know the rest of the story. The limited success of the class action settlements is a stark illustration of how unnecessary much of this work was. Class council achieved a formal agreement for Porcelana to continue its replacement and reimbursement and the small expansion to include a 2007 to 2010 model 3464 and 3412 tanks made at one manufacturing plant and distributed to Texas was minuscule. And the benefit to the class is tiny in comparison to the fees being sought. Okay, miss, wait, your time, your running time is up. My overarching question here is why did Porcelana settle this as a class action, which when as far as I can tell, the fifth circuit would plainly not have allowed certification of a nationwide class action with varying laws applicable. The parties say that certification for a manufacturing defect is highly dubious. There is no attorney's fee provision anywhere in the documents that is purely crafted for the settlement. I just don't understand why Porcelana chose to settle in the first place. And having done so, what implication, if any, that has for the attorney fees? Your honor, the settlement was reached not on a national scale, but for only certain tank models made in 2011. It is not a national scope. It is not a national settlement. The case was filed as a national class action, wasn't it? It was initially, your honor, but there were several amended complaints filed. And as the case progressed, the scope of the claims was reduced by scope of the tank models and the years of manufacture. I mean, okay, this is my question though, leading into the fees. Since fifth circuit authority would have precluded a nationwide class action, how much time and how much fees were incurred trying to pursue something that the fifth circuit wouldn't allow? That's a good question, your honor. I can only state that my client was interested in ending litigation when it did, and that the fee agreement was intended to encompass only the successful claims. Those are the only subject of the settlement agreements. And rule 23 committee notes set forth clear guidance in how to evaluate a fee award. We suggested that the district court follow that clear guidance and tie the award to the benefit to the class. What was the benefit conferred on the class? We thought all along that it would be a very small amount. Indeed, plaintiff's counsel represented to her clients and to the judge that they would seek less than one third of the overall benefit. That benefit is much smaller than the $12 million initially sought, and then the 12.7. I'm sorry, I interrupted. Excuse me, your brief estimates $500,000 in monetary benefit. There's also an equitable aspect to the settlement. Is that amount contested by them? The dollar amounts and so on? I don't know the answer to that, your honor. You'll have to ask Ms. Bell-Stanton. I don't know if it's contested, but it's an extended warranty, which entitles a consumer to a $35 payment for a replacement tank. Well, how many people are in this class? That's a good question. It's based on tank numbers, not people. I can tell you that on remand, we will have the exact number of clients claimants as of this summer. It is anticipated these class action administrations will be closed, and we will know an exact number of the benefits to be paid. But approximately 2,000 claims were made in the 2011 class, and I believe, and Ms. Bell-Stanton can correct me if I'm wrong. I don't have it in front of me. I believe 200 claims in the 2007 to 2010 class. I can get that information briefly and address it during my rebuttal. So, Counsel, what did the settlement agreements say about fees, attorney's fees? That we will pay reasonable attorney's fees for the, in connection with the class settlements. We did not agree, Your Honor, to pay for attorney's fees for time spent and expenses incurred chasing certification and settlement of other class- Is there anything that would have prevented you from being more explicit about fees and amounts when you negotiated that settlement? I don't know that we needed to be more explicit. The agreement covers fees for the claims that were actually settled, Your Honor, not the ones that, and settled as a class, not the ones that were outliers and that received no compensation at all as, I'm sorry, received no certification as a class member. Where did the district court, the magistrate and the district court make their error in computing the fee award? Was it in applying the Johnson factors or was it in calculation of the Lodestar? Let me clarify that the district court judge decided the fee award. The rest of the case was handled by the magistrate. And so the fee issue was essentially a first impression for our court who did talk about, did deal with some summary judgment issues, of course, when those rulings were appealed. The error was in, number one, not excluding the fees and expenses spent for time and clients that did not succeed. Number two, you have to apply the Johnson factors. What's the relative success? When you look at the fact that this is simply an extension of a replacement program, a compensation program that Porcelana had already instituted, then you realize that it's not as successful as class counsel would have stated in its brief. So it's a two-part error. What specific Johnson factor was in error or not calculated appropriately? The success achieved is the glaring error. By success, you mean settlement payment? Correct, correct. Replacement, whatever it was. Yes, Your Honor. The fees have to be reasonably expended by class counsel for their successful clients. There are many unsuccessful clients and many of the people that they represented simply got no relief at all. Their claims had to be abandoned with this settlement. When analyzing the- Counsel. Excuse me, Judge Bates. So when you negotiated the settlement, is there anything that would have prevented you from agreeing on a very specific amount for a term? Yes, Your Honor, without getting into too much detail, it was plaintiff's counsel that prevented us from agreeing to an amount. It was impossible to negotiate from $12 million for one class. So you, well, so he made you settle a case, though? No, Your Honor, we settled the case and agreed that a judge, that the courts would decide what a reasonable fee would be, knowing that the courts would be guided by longstanding precedent in the Fifth Circuit and the rule itself that says you have to look at the benefit conferred on the class. But the answer to my question is, if y'all had agreed that, I don't care how many people you got, the most we're gonna pay you in attorney's fees is $2 million, you could have agreed to that? There would never have been a settlement, Your Honor. There would never have been an agreement. It wasn't possible with- We know if people don't settle, then they go to trial, right? Yes, yes. All right. Okay. One more question. You've said that the claims for years outside 2010-11 and for many other tank models and so on were, quote, abandoned. Are they included, were they dismissed, or are they in such a form that they foreclose any possible claims being made on behalf of users of those tanks later on? All of the unsuccessful claims were dismissed, Your Honor. Okay, I wasn't clear on that. Okay. So there's no race judicata as to those. Okay, you've reserved time for rebuttal. We'll hear from Ms. Pell Stanton. Thank you, Your Honors. Good afternoon. I don't need any delay time in terms of answering questions. So if the court has questions, please feel free to interrupt me. And to that end, may it please the court. My name is Rebecca Bell Stanton, and along with Scott Carpenter, we asked this court to affirm a detailed, thorough analysis and opinion on attorneys' fees and expenses in this matter. Typically, I don't like to spend a lot of time in terms of going through record representations. But as the court is probably aware, in briefing, class counsel had to spend a great deal of time going through correcting what was represented on paper and what was actually in the record. We're suffering a little bit from that now. So if the court will bear with me on getting to a couple of clarifying facts, it's important. Your Honors, there were no clients, there's no client that lost in this settlement. Not a single client had their claim abdicated. In fact, as this last argument with Judge Jones noted, there's no res judicata. The claims, they were not class members. No, they were not, but you sued them to become class members, did you not? Absolutely, Your Honor. And we need to look at the inverse and what that argument truly means in the class action context. As proposed by Porcelana, that would mean from the outset of the original complaint, when only the information is available to a defendant, that we are bound to a percentage of potential class members and that every step along the way, as we should in discovery, we continue to obtain information and narrow the issues for either certification or trial, that every step along the way in accomplishing that decreases our ability to recover for the work performed. That's an inverted perception of whether the work performed goes to the benefit of the class. Well, let me give you an example in the Migas case where the plaintiff filed four or five different claims based on alleged pregnancy discrimination. And this court had no hesitation in saying, since she only recovered from one of them, I believe it was a 60% discount in the requested fees was appropriate. It seems to me, and let me just point out that that was a Title VII in pregnancy discrimination where Congress has decided that this is important, I'm almost finished, important enough to shift fees. Nor is this case a 1983 case. This is one that was not even pled originally as what would have passed muster as a class action in the Fifth Circuit because it was purportedly nationwide in scope and based on state law under the Glock case and several successors. Castano, I do not understand how we can require Porcelana to pay for any claims that were pled but not ultimately recovered on. And Your Honor, I'm gonna break that question into three parts. And the first being the Migas case and its applicability or inapplicability. Second, the scope of the pleadings and whether certification was permitted. And then lastly, I'll look at it in terms of whether there are fees awarded for individuals that receive no benefit. Although a lot of that ties in together, the court is correct, obviously, that in the Migas case, that was a Title VII case. And the statute explicitly described a prevailing party to be the entity, the person that would be entitled to fees. And that's important, Your Honor, because the statute of review never, the standard of review never changed in any of this court's opinions and should be applied today. And in the Migas case, the court noted, factual findings will be reviewed for clear error and the application of any other factors such as a reduction or enhancement would be done under an abusive discretion standard. In Migas, there was a singular plaintiff with identifiable prevailing issues. That's not what we have in this case. Your Honors, the defendants, we received benefits on all of our causes of action. Now, some claims went towards some of the class members, some went to others, but we prevailed on everything. And so to call us the losing party, a non-prevailing party, it just doesn't fit in the Migas analysis. If we apply the same standard of review that this court did in Migas, then it needs to be affirmed below. Now, as to whether this should have ever been certified or ever pleaded as a national class action, Your Honors, we call it the lack of geographic scope so that we don't call it national. That was under Rule 23b-2, which has different, I don't wanna get into the certification elements. For equitable relief only, that's not for damages unless it's in your appendage. That's absolutely correct, Your Honor, which is why we also pled the hybrid, Rule 23b-3, for the damages case. And it's interesting, Your Honor, that you point that out, considering the oft-repeated analysis that all we did was copycat what Vortens was already doing. Vortens was not already including damages awards. And the progression of this voluntary program that was being done behind the scenes, again, I don't wanna get too detailed in the facts, but the district court was presented with all of these same facts, both at the time of the certification requests, at the time of preliminary approval, at the time of final approval, and- The district court, all the district court did, if I understand, you're talking about the district court or the magistrate judge? Your Honor, that's a good point. It was the magistrate up until the final- The award. Well, and the final approvals. The district court did the final approvals of the settlements. To re-argue what the scope of certification would have been, it's difficult because a lot of work halted and was changed because of the certification.  There was no certification, was there, ma'am? Settlement certification, yes, Your Honor. And on the 2007 to 2010, liability issues were certified, and upon the certification of those liability issues, settlement was entertained. So to re-argue the propriety of settlement, I mean, I'm sorry, the propriety of certification after Porcelana also stood before both the magistrate and the district court and said, we have risk in this manufacturing defect case, and this is a fair and a reasonable settlement, the court evaluated those arguments and came to the same conclusion. Well, that's all. I take your statements for what they're worth, but they're not quite responsive to what I was implying, which was the vast scope of the class that you originally pled, and I have not looked at your pleading, whether it originally sounded in B3 or B2 or both, versus the fact that you ultimately settled a much narrower range. They've got a very good chart in their brief that shows how compressed your claims became, and yet you're asking for the whole amount of money as if you had prevailed for nine years in about eight different kinds of toilet tanks, correct? Yes, your honor. A single bit of your fee request that you have voluntarily reduced is unnecessary to the ultimate recovery. I'm sorry, I've missed the last part. Whether it's any of our voluntary reductions? Yes. All of them. Your honor, we went through- And how much was that? A million dollars? Approximately. A hundred thousand, what? Yeah, it was, when we went through originally based upon the two settlements. Then we went through and segregated and excluded anything that pertained to the models and years that were not recovered for. We didn't recover, if we look at the actual billing records and the court's analysis of the billing records, we did not recover any fees for a 2005 tank, for discovery for 2005. If all of those were redacted, excluded, and we did not get a fees awarded on that. How much was that? Your honor, we also had a chart, I believe that it was attached. I have the record citation. Just rough figures, five figures, six figures, four figures. Your honor, it's closer to like 750,000, I would say. And again, the argument is being inverted. It's almost a fundamental switch as to whether the work we did perform and the work that we were awarded fees on, whether those were for the benefit of the class. Porcelana suggests this court should look at it invertly. Was there also the potential that it could have affected others? And by example, your honor, a corporate representative deposition that went to the benefit of the entire class and to the benefit of the settlement. Porcelana proposes only a 6% recovery. And that's across the board. So obviously actions that were for everyone, it's Porcelana's position that because the class could have been bigger, we shouldn't be entitled to recover for the entire deposition. No, no, again, it's their position that you should recover for what you benefit, you conferred on the class who settled. Absolutely. The degree of success has to do with. Well, absolutely, your honor. And again, it is their position that the district court really didn't address that issue sufficiently or basically not at all. He gave lip service to it, but he did not show in his ruling that he had done that. Your honor, in regard to the benefits received, if that's where the focus is, as this court knows, as long as there is evidence in the record that the district court considered each of the Johnson factors. And here we have, again, a detailed, thorough, scrupulous analysis in a consolidated briefing. But perhaps more importantly, your honor, this court even last year in two cases, Cruz and in Adam, confirmed that the degree of success cannot be the sole factor upon which a fee is reversed. That is not a basis to construe an abuse of discretion. In fact, Justice Graves, I believe you wrote the opinion in Black versus Subtle Poo that also outlined, if all you have is, we think the success is smaller than what you could have received, that's not enough to constitute an abuse of discretion. And your honors, the errors that are being brought before the court in terms of the progression of the objections need to be clarified. Because your honors, I understand the problem in looking at the final result, what was presented to the court in the consolidated briefing for the fee. What this court needs to understand is that we had multiple rounds of submissions, objections, responses, reductions, all of that occurred prior to the final consolidated fee. So for Porcelana to stand up and say, well, the court merely accepted whatever class counsel requested at the time of the fee exchange, ignores everything that happened before that. I'm not entirely sure why Porcelana says that class counsel simply ignored all of the line by line objections. To the contrary, we went through and did a line by line response to each one of those. Sometimes we involuntarily adjusted, sometimes we said those objections were unfounded. And in fact, Judge Mazant, in his opinion noted, those objections weren't even carried over by Porcelana into the consolidated briefing. But because the court had an independent duty to evaluate the billing records, it did so. And because class counsel had provided detailed billing contemporaneous records, which Porcelana agrees in its reply briefing, demonstrates an exercise of billing judgment with uncontested proof regarding the validity of the rates. All of those amount of rate times result, if there is no additional excessive notation, there is no duplicative indication. There is an admission that proper billing judgment was utilized. I'm sorry, Judge Graves, did you have a question? No. Okay, sorry. All right, I have a question, Ms. Pilsen. How much money is gonna go out to the claimants here? Your Honor, we don't have an exact amount. This is- Well, let me just suggest to you what you offer is replacement of tanks. And let's say there are 2,000, you agree there were approximately 2,000 members at MAX in the 2011 class? We do not, Your Honor. There's a reason that there's no evidence trying to be brought before this court on the claims, potential claims rate, because nothing was attached to the claims rate. I actually, we received an update this morning. I haven't looked at it. I was obviously preparing for oral argument. I'm sorry. Give me a round figure. You've got some idea. You're the plaintiff's counsel. You ought to know how many people have filed claims and approximately how much money your claims organizer is gonna be giving out. And Your Honor- That's your duty to know. Yes, Your Honor, and to that end, because there are multiple categories, that's where I'm having difficulty getting the number. In some total, it is less than a million dollars that is being paid out. Okay. So I can give the court that analysis- So your fee is 12 times the money that'll be paid out? Well, no, Your Honor. That's the amount that we know has already been calculated. We have lots of disputes still ongoing in resolving the claims administration. And we have the value of the equitable relief. Porcelana keeps forgetting that it's not just about replacement tanks. This is about replacement tanks. It's about installation costs that Porcelana would have never paid for, but for this litigation. It's about extended warranties on warranties that had ended 10 years ago that we've received warranties on. Yeah, well, most toilets last a long time. So if they weren't effectively manufactured, they're gonna last 30 or 40 years at least. Absolutely. And that was our- The money value of an extended warranty may not be the biggest thing, especially when you don't have proof of a manufacturing defect outside of 2011. Well, and Your Honor, again, that goes back to, excuse me, the separation of the 2007 and 2010, why it was only a B2 class providing equitable relief. And again, when we start looking at the amount of benefit, if we're going to attach this to a claims rate, which, Your Honors, is contrary to this court's position that we should retroactively look at a claims rate. There's a reason that Porcelana can't present this court with any authority for this type of guessing what the claims rate is going to be and then using a percentage of a projected claims rate. I wouldn't argue that, but I would argue that you have to have, there's Hensley v. Eckerhart says there has to be some proportionality or relationship between the benefit gained in the litigation and the amount of fees claimed. Absolutely, Your Honor. And that's where the heightened scrutiny comes into play. But Hensley- This is where using heightened scrutiny and looking at previous cases that this court has decided and ignoring raw proportionality, approving this $12 million fee on a settlement that is one million, maybe more in the rent, it's an outlier. Tell me what's the very best case you have for a comparable multimillion dollar fee that is disputed. I have two, Your Honor, but before I give them to you, I'd like to point out that the fee awarded was only $4.3 million. And so that is a significantly different outlier. You're right. And so, and I think, Your Honor, that bears noting. Counsel, the benefit to the class as a result of the settlement is about a half million dollars. Is that right? No, Your Honor. The benefit to the class just on, if we look at the benefit being the value of it and not attached to what a claims rate might be, we provided a chart that was objected to and then amended and never objected to again that assess the values closer to in the median a $23 million value. Because we provided a $4,000 allowance for tanks that had caused additional property damage. $4,000 on 292,000 tanks. Now, obviously we started the process of going through valuation. And then it was actually porcelana that pulled back from that and reminded the court and counsel that we were looking solely at a load star. We can't have it both ways. We know that the settlement agreement does not attach it to the claims rate. We know that the benefits that were obtained, whether or not will ultimately be claimed, but obtained far exceed what we received in fees. And again, this court, I believe it's gruel, but in this court, in that case, this court said even at a 33 times, even at 33 times greater amount when we look at the benefits. That was a $60,000 fee that's nowhere comparable. But I mean, that's almost absurd. It's not comparable. Well, law is comparable. The money there is not comparable. And Your Honor, I see I'm out of time. If I may just briefly address that issue in terms of comparability. Again, that was a singular plaintiff with a singular award. And so there was a smaller number, but the law itself will still apply. And so, because we asked this court to adhere to its entire precedent before now, which is absent a showing of clear error and an abuse of discretion, that it be affirmed. Thank you. And I appreciate your cheerfulness in responding to my questions. What was the other case that you said is a good analogy for yours? Your Honor, I believe for the proportionality, I have gruel written down as my primary one. The disparity. Well, the Coombs case acknowledged it, and then the court actually reversed the Coombs case because low damage reward was not a sufficient basis in an FLSA case, so. Okay, thank you. Thank you. Ms. Matthews. Thank you, Your Honors. I need to address the estimate of the value for the class. The plaintiff's statistician took the number of tanks produced, not the number of tanks installed, not the number of tanks still remaining in households today, and then multiplied it by the value of a class tank, $35. That's a replacement cost. Then they added several hundred dollars for installation fees. Then they added other amounts for inspections and additional plumbing expenses. These are not expenses that will ever be incurred for an extended warranty on a class tank. The most that can ever be provided to a class member who did not participate in the settlement, but whose warranty is extended to December 31st of this year, is $35. Now, there are very few warranty claims that have actually been made. Again, this illustrates exactly why we have to follow the committee notes for Rule 23 and see exactly what are the numbers, what are the benefits provided, how many claims are actually made. It's not that much longer to wait to get certainty on these numbers. If you, I think- You're asking, I'm not gonna, you'll be able to make your points, but if we were to vacate and remand, what would the district court be instructed to do? The district court would be instructed to require plaintiff's counsel to go through its billing entries and divide up the vague descriptions where no one can tell what the time, which class members the time was actually spent for, and then also reduce the expenses, because as it stands, Porcelana has been in order to pay for expenses and fees that went toward benefiting class members that did not succeed in these claims. It is not Porcelana's burden to point out what was and what was not expended on behalf of the successful claimants. We tried to do that the first time around. There were responses to that. The court only deducted less than $60,000, it looks like, in fees. If you look at the order, there is a specific number of hours that were reduced for the two class counsel. Those do not even approach $100,000. Secondly, there have to be clear findings on what actually benefited the class. There is going to be no easier benchmark of that than what was actually paid out in the class action settlements. This dovetails exactly into the committee notes for Rule 23. The specific instructions will include a requirement that class counsel not seek expenses for these class members that didn't succeed. The prime example is Sean Capser's expenses and the time spent by counsel billing for Mr. Capser's preparation and all of his work. I mean, it's tens of thousands of dollars to try to extrapolate a very limited success to other classes. But the judge didn't go that far and he needs to go that far. He needs to go through and look and be assisted by class counsel in determining what needs to be deducted. Justice Clement, you asked me about the Johnson factors and I misspoke. The novelty of this case, it wasn't novel. Porcelana had already admitted it had a manufacturing problem in 2011, again in 2016. There's nothing novel about a manufacturing defect unless you're trying to extrapolate it to many years of manufacture and many tank models made in two separate manufacturing plants. That's where the novelty comes into play, but that's not the successful argument. If they'd had a design defect case, they could have prevailed and gotten perhaps millions of dollars in fees, but that's not what they succeeded on. Mark and Amber Fessler, class lead plaintiffs, ultimately were not in a class. Their tanks were not made at the right plant and they ultimately are not class members. Everything associated with them needs to be deducted as well. I see I'm out of time. What's the specific defect for the tanks? What is the specific defect, the manufacturing defect? For the two tanks? It is a problem with strength and it was brought about during the manufacturing process because the thermal curve of the kilns that the product travels through to become fired and to become hard porcelain, that was not adjusted to account for additional product on the conveyor belt, so to speak. And it involved another factor of molding casting machines at one plant becoming clogged with product and not allowing enough moisture to be taken out during that manufacturing process. So too much moisture stayed in those tanks and they were not fired long enough in the kiln. It was the convergence of those two factors together that caused that limited problem. So what did that affect? What did that affect? I mean, when you've got the tank in your house. It affects the strength of the tank, Your Honor. That means that it's likely to crack and then you've got a flooding situation. It's a property damage situation. And I'm sorry, out of time. Thank you. Thank you. Did you have a question? Oh, I was just gonna say, ultimately the tanks would crack or pop open. Correct, that's correct. Yes. Okay, well, thank you very much. Thank you. May we be excused? Yes.